In the Matter of the Estate of GEORGE R. HOLCOMB, Deceased.

Surrogate's Court, Washington County, May 2, 1933.

*A. D. Bartholomew*, for the petitioner.

*S. E. Everts*, for the contestants.

*L. M. Layden*, as special guardian for infant parties.

VAN KIRK, S. I have hesitated in making a decision in this proceeding because of the apparently positive opinion evidence of the doctors who were called as witnesses. It is in effect that the decedent was irrational throughout the night during which the will was made. The real question at issue is the decedent's condition of mind at the time of the execution of the will, and after a careful examination of all of the evidence I have concluded that the decedent was in fact rational at the time he executed his will, and that the will, therefore, should be admitted to probate as a valid will.

The decedent was afflicted with a malignant growth in his stomach. He was taken to Rutland Hospital. He was removed to the emergency ward of the hospital in the early evening of July 9, 1932. The will was prepared and executed by the decedent about eleven P. M., July ninth, and he died about nine-thirty A. M. on the morning of July 10, 1932.

The will was drawn by Mr. A. D. Bartholomew, of Whitehall, an attorney in excellent standing in Washington county, and it was executed under his direction. All formalities were carefully followed. The testimony of the subscribing witnesses is positive and complete in all respects and fulfills all the requirements of the law, with the possible exception of the fourth witness, Miss Vancelette, who was a nurse in the hospital and apparently a somewhat hostile witness, but in spite of an apparent reluctance upon her part in giving her testimony, she, nevertheless, impressed me as an honest witness, and I consider her testimony of considerable importance.

The testimony of the doctors is positive to the effect that the decedent was irrational, whenever their opinion of his mental condition was asked, and it seems to have been based principally upon the theory that the decedent could not talk and was in a semi-conscious condition, although he could be aroused at times, and the doctors seem to be of the opinion that a person who cannot talk cannot be rational. The question, however, here is not whether the decedent could talk but whether he was in a fit mental condition to understand what was going on and what he wanted to do. A person may be unable to talk, but, nevertheless, have a clear mind and be perfectly rational.

It seems to me that the testimony of Miss Vancelette, the nurse, is significant as bearing upon the condition of mind of the decedent at the time of the execution of the will. Mr. Bartholomew testified positively that after the will was read over to the decedent, he declared it to be as he wanted it, by the use of the word " Yes," and that when the decedent was asked if he desired Mr. Bartholomew and his wife and son to act as witnesses he replied in the affirmative by the use of the word " Yes." Miss Vancelette testifies that he did not make use of the word " Yes " when these questions were put to him, but that he did nod his head in the affirmative and her testimony clearly indicates that the decedent understood the questions which were being put to him and knew how to answer them. Even Miss Heustis, a witness for the contestant, and a nurse in attendance upon the decedent, testifies: " He tried to talk to me. He said, ' I am ' something. I just got ' I'm.' " This testimony indicates rather a rational condition of mind than an irrational one. The man tried to talk but he could not, but his physical inability to speak does not by any means indicate that he was irrational. It seems to me that he was rational and wanted to express himself but was physically unable to do so. Again, Miss Heustis says in her testimony: " You could rouse him up until about midnight, then we didn't bother after that." This

testimony would indicate that the decedent could be roused up to a time after the will had been executed and the testimony also of the doctors is to the effect that the man could be roused at times, at least during the first half of the night. Even Dr. Williams, in his testimony, testifies in response to a question, " Yes, I asked him a question and he didn't answer. I saw his mouth work, his lips move, but he made no noise." This does not at all indicate that the man was irrational. It rather indicates that he was rational and that he understood the question and attempted to answer it, but was physically unable to do so.

I consider the testimony on the whole strongly in favor of a rational condition of mind on the part of the decedent, except for the opinion evidence of the doctors who were not present at the precise time the will was executed, and I do not feel that I can consider their opinions of the decedent's condition of mind as overcoming the positive evidence of the witnesses who were present at the time of the execution of the will. Besides, the fact that the will was prepared and executed by and under the guidance of a lawyer in good standing must have some weight In order to refuse the probate of this will I must reject the very positive evidence of Mr. Bartholomew, which would mean, of course, that I doubt the truth of his testimony, and this I cannot do. I am obliged to hold, and it is my feeling that the incidents transpiring at.the time of the execution of the will occurred just as he states them to have occurred.

The motion of the contestants to dismiss the proceeding is denied, and the will is admitted to probate, and a decree may be entered accordingly.